UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN MOORE,

                    Petitioner,

vs.                                 Case No.  2:07-cv-80-FtM-36DNF

STATE   OF   FLORIDA   and   FLORIDA
ATTORNEY GENERAL,

                    Respondents.
_____

## OPINION AND ORDER

### I. Status

Petitioner John Moore (hereinafter "Petitioner" or "Moore") initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1, Petition) pursuant to 28 U.S.C. § 2254 on February 11, 2007.[1]  Petitioner challenges his judgment of conviction for: (1) conspiracy to traffic in cocaine more than 400 grams and less than 150 kilograms; and (2) conspiracy to commit RICO entered in the Twentieth Judicial Circuit Court in Collier County, Florida. Petition at 1.  Respondent filed a Response (Doc. #11, Response) and supporting exhibits (Docs. #13, Exhs. 1-9),[2] including

_____

[1]The Petition was docketed and filed with the Court  on February 14, 2007; however, the Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." *Alexander v. Sec'y Dep't of Corr.*, 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

[2]Respondent's exhibits consist of exhibits 1-9.  Exhibit 5 contains ten volumes (I-X) and exhibit 9 contains twelve volumes (I-XII).  Thus, the Court cites to the exhibits accordingly. For
(continued...)

Petitioner's post-conviction motions and hearing transcripts. Petitioner filed a Reply (Doc. #16, Reply).  This matter is ripe for review.

## II.  Procedural History

### A.  Pre-trial and Trial

The Court incorporates, in pertinent part, the history of this case as set forth in the State's response to Petitioner's Rule 3.850 motion, which cites to the trial transcript:

> This case began with an investigation of Moore's co-defendants, the Johnsons.  FDLE Special Agent Ciro Dominquez received information from a confidential source . . . that the Johnsons were distributing cocaine in Collier County.  This confidential source introduced Dominquez to Robin Smith, a former employee of Joe Johnson Masonry.  Smith worked for the Johnsons between the summer of 1996 through September 1997.  Smith had personal knowledge of the Johnsons' cocaine-distributing organization.  Smith's duties as a secretary for Joe Johnson Masonry included participation in the Johnsons' cocaine-distributing activities. This included weighing, diluting, packaging and selling cocaine.  It also included entering detailed records of the Johnsons' cocaine distributing in the personal home computer under the direction of Karen Johnson.  The record was entitled "Test 97."   Test 97 included entries of receiving trafficking amounts of Cocaine from [Petitioner] Moore, giving Moore free Cocaine for his providing Cocaine to the Johnsons and purchasing Cocaine from the Johnsons. Smith identified Moore as one of the Johnsons' sources of Cocaine.   Witnesses identified Moore as one of the Johnsons' Cocaine customers.  Moore's transactions were memorialize[d] in the Johnsons' computer records.  During Smith's employment with the Johnsons, she would bring home a Test 97 diskette.  Smith still had a Test 97

_____

[2](...continued)
pinpoint citations, the Court refers to the batestamped numbers, which, for the most part, appear at the bottom, right hand side of the document.

diskette when she met with Dominquez.  Smith turned this
Test 97 diskette over to Dominquez.  This diskette was
forwarded to FDLE's Tampa laboratory to retrieve the
relevant data.  FDLE Computer Evidence Analysis Scott
Hansen was asked to recover all evidence that was saved
in a "QuickBooks" program format.  Hansen recovered and
printed the data from Test97.  Hans[e]n also copied the
data on a backup diskette.  There were two files not in
QuickBooks format which Hans[e]n did not copy onto his
backup diskette. Between the time of Hans[e]n's recovery
of the data and trial, the Fort Myers office of FDLE had
lost Smith's original diskette.  At trial, Hans[e]n's
backup Test 97 diskette was entered into evidence as
state's exhibit 120.  The data from Hans[e]n's Test 97
diskette was introduced at trial as state's exhibit 1
through 6 and 9.

On March 20, 1998, Smith and FDLE Special Agent
Wooldridge conducted a controlled purchase from the
Johnsons' residence. Prior to the controlled buy, FDLE
agents asked Smith to try to gather from the Johnsons'
home computer records related to the cocaine
transactions.  While Wooldridge and Smith were in the
Johnsons' home, Smith conducted an unsuccessful illegal
search of the Johnsons' personal computer.  When the
search was unsuccessful, Smith illegally seized computer
diskettes from the Johnsons' home. One of the diskettes,
entitled Joe Johnson Masonry, contained evidence of money
laundering related to the Johnsons' illegal drug
transactions.  Once the state learned of this search and
seizure, the state disclosed it to defendants and
stipulated to the suppression of the Joe Johnson Masonry
diskette.   During the controlled buy, Smith bought
approximately one ounce of Cocaine from Jimmy Hanifen,
one of the associates in the Johnsons' cocaine-
distribution enterprise.

On March 26, 1998, Florida Department of Law Enforcement
(FDLE) obtained a search warrant for the Johnsons'
residence . . . based upon the controlled buy that
occurred in the home of co-defendants.

On March 27, 1998, FDLE executed the warrant at the
Johnsons' home. During the search, FDLE agents recovered
Test 97 and Test 98 records.  This data was introduced at
trial as state's exhibits 23, 27, 36 and 37.

>After the state disclosed the misdeeds of Smith as an
>agent of FDLE, they became the subject of motions to
>dismiss and suppress the proceeds of the search warrant.
>The state stipulated to the suppression of the Joe
>Johnson Masonry diskette illegally seized from the
>Johnsons' home during the controlled buy. However, the
>Johnsons' motions to suppress the proceeds of the search
>warrant, which included all other computer related
>evidence, was denied.

Exh. 5, Vol. I at 35-42 (internal citations to trial transcript omitted).

An Amended Information filed against Petitioner, and two co-defendants, charged Petitioner with the following four counts: (1) Racketeering, (2) Conspiracy to Racketeer, (3) Conspiracy to Traffic in Cocaine 400 grams or more, and (4) Trafficking in Cocaine 400 grams or more.[3]  Exh. 5, Vol. I at 81.

On May 23, 2000, Petitioner's nine-day trial commenced as he proceeded to trial with his two co-defendants, Joe and Karen Johnson.[4]  At the close of the State's case, the trial court granted Petitioner's motion for acquittal on two counts:

---

[3]The Information contains 14 counts and 348 predicate acts. Exh. 5, Vol. I at 81-141.  Petitioner's two co-defendants were husband and wife, Joe and Karen Johnson.  See Exh. 5, VIII at 1458. There was a third co-defendant, Fugate, who remained a fugitive from the law and was located a short time before trial.  As such, this co-defendant was granted a continuance and had a separate trial.

[4]Prior to trial, co-conspirator Joe Johnson moved to sever his trial from the joint trial.  Exh. 5, Vol. VIII at 1458.  The court held a hearing at which co-conspirators Joe and Karen Johnson were present.  Id., Vol. VI at 1149.  Counsel for Petitioner did not join or independently move to sever Petitioner from the joint trial.  The court denied co-conspirator Joe Johnson's motion to sever without prejudice.  Id. at 1173.

racketeering and trafficking in cocaine.  The jury found Petitioner guilty of two counts: conspiracy to traffic in cocaine, 400 grams or more, and RICO conspiracy.  Exh. 5, Vol. VIII at 1461; *see also* Exh. 5, Vol. I at 213.  Petitioner was sentenced to fifteen-years incarceration for conspiring to traffic in cocaine and a concurrent ten-year sentence for conspiring to commit RICO, with 393 days credit for time-served.  Petition at 13.

### B. Post-Conviction Pleadings

Petitioner, through counsel, pursued a direct appeal.  Exh. 1. In his appellate brief, Petitioner raised the following three grounds for relief:

(1) there exists legally insufficient evidence to support the conspiracy to traffic in cocaine 400 grams or more conviction;

(2) there exists legally insufficient evidence to support the conspiracy to racketeer conviction; and

(3) the trial court reversibly erred by admitting in computer record evidence over defense objection that consisted of hearsay.

Exh. 1.  The State filed an answer brief.  Exh. 2.  The appellate court entered an order *per curiam* affirming the trial court on December 21, 2001.  *Moore v. State*, 806 So. 2d 477 (Fla. 2d DCA 2001);  Exh. 3.

Petitioner next filed a post-conviction motion pursuant to Florida Rule of Criminal Procedure 3.850 (hereinafter "Rule 3.850 Motion") raising the following three grounds for relief:

(1) prosecutorial misconduct stemming from records seized by law enforcement;

(2) ineffective assistance of defense counsel based on counsel's failure to move to sever his case; and

(3) ineffective assistance of defense counsel stemming from counsel's drug addiction during trial.

Exh. 5, Vol IV at 1-33.  Supporting his motion, Petitioner attached the affidavits from co-defendant Joe Johnson; Joe Johnson's trial counsel, Stephen Grogoza; and, an affidavit from Donald Schold, who was Petitioner's trial counsel.  *Id.*  Pursuant to the post-conviction court's order, the State filed a response in opposition to Petitioner's Rule 3.850 motion.  *Id.* at 34-51.  The State attached supporting exhibits, including *inter alia*: relevant portions of the trial transcript, stipulated facts, a copy of a search warrant, and a pre-trial motion to sever filed on behalf of a co-defendant.  *Id.* at 52-53.  Petitioner filed a reply to the response.  *Id.* at 148.  The post-conviction court entered an order summarily denying Petitioner's Rule 3.850 motion.  *Id.* at 159.  Petitioner filed a motion for re-hearing, but the post-conviction court denied his motion.  *Id.* at 182-189.

Petitioner pursued an appeal of the adverse result from his Rule 3.850 Motion.  The appellate court affirmed the post-conviction court's denial of grounds one and three, but remanded for an evidentiary hearing on ground two: whether defense counsel rendered ineffective assistance for failing to seek a severance of the trial for Petitioner.  *Id.* at 196.  On remand, the post-

conviction court appointed Petitioner counsel and held an evidentiary hearing. *See* Exh. 5, Vol. IV.  Upon conclusion of the evidentiary hearing, the court entered an order denying Petitioner relief.  Exh. 5, Vol. II at 255.

In the interim, Petitioner filed a motion to correct his illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800 on the basis that the trial court illegally imposed a fifteen-year minimum mandatory sentence pursuant to a Florida statute that was later ruled unconstitutional.  *Id.* at 190.  The State filed a response in opposition to the motion.  *Id.*  The post-conviction court denied Petitioner's motion, finding that the trial court did *not* impose a minimum mandatory sentence.  *Id.* at 209 (emphasis added).

### III.  Instant Petition and Applicable § 2254 Law

Petitioner filed his timely[5] Petition raising the following five grounds for relief:

(1)  Trial counsel rendered ineffective assistance for failing to file a pre-trial motion to sever;

(2) Trial counsel rendered ineffective assistance for failing to investigate, prepare, and present a defense;

(3) Petitioner was denied the right to be protected against double jeopardy under the Fifth Amendment when evidence was used on an acquitted charge to convict him;

---

[5]The AEDPA imposes a one-year statute of limitations on § 2254 actions.  28 U.S.C. § 2244(d).  Respondent submits that the Petition is timely filed based on the tolling of the time period while the evidentiary hearing was pending on Petitioner's Rule 3.850 motion.  Response at 3, fn. 4.  The Court agrees.

(4) Insufficient evidence to convict Petitioner on the conspiracy to traffic in cocaine, 400 grams or more, charge, and;

(5) Trial court erred by allowing the State to introduce into evidence computer records that constituted inadmissible hearsay.

*See generally* Petition.

Post-AEDPA law governs this action. *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007); *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Davis v. Jones*, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). Under AEDPA, the federal court's review is "greatly circumscribed and is highly deferential to the state courts." *Alston v. Fla. Dep't of Corr.*, 610 F.3d 1318, 1325 (11th Cir. 2010)(citations omitted); *Stewart v. Sec'y Dep't of Corr.*, 476 F.3d 1193, 1208 (11th Cir. 2007). Essentially, AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). The following standards apply to this case.

## A.  Only Federal Claims are Cognizable

A federal court may entertain an application for a writ of habeas corpus, from a person in state custody pursuant to a state court judgment, only on the grounds that the petitioner is in custody in violation of the United States Constitution or the laws or treaties of the United States. 28 U.S.C. § 2254(a). A claimed

violation of state law is generally insufficient to warrant review or relief by a federal court under § 2254. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000). Questions of state law are only reviewed to determine whether the alleged errors rendered "the entire trial fundamentally unfair." *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983).

**B.  Claim Must Be Exhausted in State Court**

A petitioner, even when asserting grounds that warrant review by a federal court under § 2254, must have first raised such grounds before the state courts, thereby giving the state courts the initial opportunity to address the federal issues. A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. § 2254(b)(1)(A). This imposes a "total exhaustion" requirement in which all of the federal issues must have first been presented to the state courts. *Rhines v. Weber*, 544 U.S. 269, 274 (2005).

"[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). "A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he

first properly raised the issue in the state courts." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). *See also Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003), *cert. denied sub nom. Pruitt v. Hooks*, 543 U.S. 838 (2004). To properly exhaust a claim, a petitioner must present the *same* claim to the state court that he urges the federal court to consider. A mere citation to the federal constitution is insufficient for purposes of exhaustion. *Anderson v. Harless*, 459 U.S. 4, 7 (1983). "'[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'" *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (quoting *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1343-44 (11th Cir. 2004)).

When presented with a "mixed" petition, i.e., one containing both unexhausted and exhausted claims, a district court is ordinarily required to either dismiss the petition, *Pliler v. Ford*, 542 U.S. 225, 227 (2004); *Rose v. Lundy*, 455 U.S. 509 (1982), or, in limited circumstances and under the district court's discretion, "grant a stay and abeyance to allow the petitioner to exhaust the unexhausted claim." *Ogle*, 488 F.3d at 1370 (citing *Rhines*, 544 U.S. at 277-79). However, when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural rule, the Eleventh Circuit has held that a district court can consider the petition but treat those unexhausted claims

as procedurally defaulted. *Ogle*, 488 F.3d at 1370. Additionally, while under the AEDPA a federal court may not grant a habeas petition that contains unexhausted claims, it may deny such a petition on the merits. *LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1261 n.26 (11th Cir. 2005).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001), *cert. denied*, 534 U.S. 1136 (2002). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, . . . . ." *Smith*, 256 F.3d at 1138.

A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. *House v. Bell*, 547 U.S. 518, 536-37 (2006); *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008). "Cause" ordinarily requires a petitioner to demonstrate "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) (quoting *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). Constitutionally ineffective assistance of counsel can constitute

cause if that claim is not itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). To show "prejudice," a petitioner must demonstrate that there is "at least a reasonable probability that the result of the proceeding would have been different." *Henderson*, 353 F.3d at 892.

Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *House,* 547 U.S. at 536; *Edwards*, 529 U.S. at 451; *Henderson*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. *See also House*, 547 U.S. at 536-37 (prisoner asserting actual innocence must establish that, "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt") (citation omitted).


C. **Deference to State Court Decision**

A federal court must afford a high level of deference to the state court's decision. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See Brown v. Payton*, 544 U.S. 133, 141 (2005); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits, which warrants deference. *Ferguson*, 527 F.3d at 1146.

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006)(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "[T]o be 'contrary to' clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d, 1144, 1155 (11th Cir. 2010) (internal quotations and citation omitted); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively

unreasonable manner, *Brown*, 544 U.S. at 134; *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), *cert. denied*, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.

### D.   Ineffective Assistance of Counsel Claims

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). *Newland v. Hall*, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. *Newland*, 527 F.3d at 1184. In *Strickland*, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, *i.e.*, "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, *i.e.*, there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[6] *Strickland*, 466 U.S. at 688; *see also Bobby Van Hook*, 558 U.S. ___, 130 S. Ct. 13, 16 (2009). Thus, a habeas court's review of a claim under the *Strickland* standard is "doubly deferential." *Knowles v. Mirzayanze*, ___ U.S. ___, 129 S. Ct. 1411, 1420 (2009)(citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Bobby Van Hook*, 130 S. Ct. at 17 (internal quotations and citations omitted). In demonstrating counsel's deficiency, it is the petitioner who bears the heavy

---

[6]There are limited exceptions to a petitioner's obligation to satisfy the aforementioned "prejudice" requirement. The exceptions arise when "[c]ircumstances giving rise to a presumption of prejudice include those in which the accused is denied counsel at a critical stage of his trial, the accused's counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," or the accused is "denied the right of effective cross-examination." *United States v. Cronic*, 466 U.S. 648, 658 (1984)(other quotations and citations omitted).

burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006), *cert. denied sub nom. Jones v. Allen*, 549 U.S. 1030 (2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. *Id.* A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. An attorney is not ineffective for failing to raise or preserve a meritless issue. *Ladd v. Jones*, 864 F.2d 108, 109-10 (11th Cir.), *cert. denied sub nom. Ladd v. Burton*, 493 U.S. 842 (1989); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (stating "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). In finding prejudice, the court must determine that the result of the proceedings would have been different considering "the totality of the evidence before the judge or jury." *Berghuis*

*v. Thompkins*, ___U.S. ___, 130 S. Ct. 2250, 2265 (2010)(quoting *Strickland*, 466 U.S. at 695).

## IV. Analysis

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. *Schriro v. Landrigan*, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, *Chandler v. McDonough*, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. *Schriro*, 127 S. Ct. at 1940.

### A. Ground One: Failure to file a Pre-Trial Motion to Sever

Petitioner first submits that trial counsel rendered ineffective assistance by failing to file a pre-trial motion to sever his trial from the joint trial with Joe and Karen Johnson, his two co-defendants. Petition at 5. Specifically, Petitioner argues that had he been tried separately, "he would have been able to have the jury focus on the lack of evidence against him. He would have been able to confront, cross-examine, and call as a witness, the owner and author of the computer records, Karen Johnson." *Id.* at 8. Instead, Petitioner contends he was found guilty "by association" with the co-defendants. *Id.* Respondent argues that the Court should deny Petitioner relief on this claim for the reasons discussed in the post-conviction court's order of denial following the evidentiary hearing. Response at 19-20.

### 1. **Exhaustion of Claim before State court**

Petitioner raised this ineffective assistance of counsel claim faulting counsel for not filing a pre-trial motion to sever. Petitioner contended that he was found "guilty by association" with the Johnsons.  Exh. 5, Vol. I at 11.  Petitioner specifically pointed out that the Johnsons were charged with "various other charges[,] such as[,] money laundering and mortgage fraud."[7]

The post-conviction court first summarily denied Petitioner relief on this ground finding that Petitioner did not allege any "substantial differences between his position and the position of his co-Defendants as to the issue of severing the trials." Exh. 5, Vol. I at 160.  In other words, the post-conviction court noted that the trial court had denied Petitioner's co-defendant's motion to severe and Petitioner did not allege why he would have faired any differently, had his counsel moved to sever.  *Id.*

Upon Petitioner's appeal, this ground was the subject of the appellate court's remand and subsequently developed during an evidentiary hearing held by the post-conviction court.  After the hearing, the post-conviction court entered an order denying Petitioner relief finding:

> Even though [defense counsel] Mr. Schold admits his preparation was inadequate, and the Court in no way condones this, this Court is mindful of the limited issue before it.  The only issue before the Court at this time

---

[7]Petitioner further argued in his Rule 3.850 that the evidence adduced at trial would exculpate him.  Exh. 5 Vol. I at 13. Petitioner stated that if witness Smith's testimony was true concerning the drug deliveries, he was only mentioned 4 times.  *Id.*

is whether counsel was ineffective within the meaning of *Strickland* specifically for not filing a motion to sever.

In *Gordon v. State*, 863 So. 2d 1215 (Fla. 2003), the Florida Supreme Court reviewed a postconviction motion in a death penalty case.  One of the issues considered was whether the trial court erred in denying, after an evidentiary hearing, a claim that trial counsel was ineffective for failing to move to sever his trial from that of his codefendant.  The Florida Supreme Court found that the defendant "failed to demonstrate that the same evidence presented at the joint trial would not have also been presented in a severed trial. Hence, no prejudice has been demonstrated." *Gordon*, 863 So. 2d at 1215.

At the hearing, Attorney Pugh testified that if Defendant had been tried separately the case presented "would have hardly differed at all" because Defendant was charged with the conspiracy and conspiracy to commit a RICO violation.  According to Attorney Pugh, the Statewide Prosecutor would have presented the same evidence and the same witnesses in a severed trial, with the exception of the evidence pertaining to the mortgage fraud charges, which only applied to Karen Johnson and Joe Johnson. Attorney Pugh also stated that he was not sure whether he would have presented the evidence pertaining to the money laundering charges at a severed trial but that the evidence would have been admissible because the money laundering was part of the RICO conspiracy.

Defendant did not present any evidence to counter Attorney Pugh's testimony that the same evidence would have been introduced at a severed trial.  Both Attorney Grogoza and Mr. Schold focused on what they felt was the limited nature of the evidence against Defendant and the fairness of trying him with Karen and Joe Johnson. However, the mere fact that a greater amount of evidence applies to Defendant's co-defendants does not necessarily mean Defendant would have been entitled to severance. *Mese v. State*, 824 So. 2d 908 (Fla. 3d DCA 2002)(In finding the trial court did not abuse its discretion in denying the defendant's motion to sever in a RICO conspiracy case, the appellate court rejected the defendant's motion to sever in a RICO conspiracy case because of "a gross disparity in the quantum of evidence to be introduced against him and that to be introduced against his co-defendants.")

Even if this Court were to assume that counsel was deficient and even if this Court were to assume that a severance may have been granted, Defendant still has the burden of demonstrating prejudice.  Although the defense attached a sizable stack of cases to "Defendant's Summary of Evidentiary Hearing," which purportedly "support the Defendant's position," none of the cases established Defendant's entitlement to relief.

Although Defendant cites cases which hold that a severance is necessary when the State wants to use evidence only admissible against one defendant, Defendant fails to specifically demonstrate what evidence presented at the joint trial would have been inadmissible against Defendant at a severed trial.  The focus of Defendant's argument seems to be that the State's main body of evidence, the computer records, would be inadmissible against Defendant either as hearsay or as a result of the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004).

As to the hearsay allegation, Defendant fails to demonstrate how the computer records fall outside the coconspirator exception to the hearsay rule.  Although Attorney Grogoza testified that he did not believe the evidence established that the Defendant was a member of the conspiracy, he provided no basis for this opinion other than the fact that more of the evidence pertained to the Johnsons.  Attorney Pugh testified that the testimony of Robin Smith established the participation of Defendant in the conspiracy sufficiently for the trial court to permit the admission of the coconspirator hearsay evidence.  Therefore, Defendant has failed to demonstrate that the computer records would have been inadmissible hearsay if Defendant was tried separately.

In *Crawford*, the Supreme Court ruled that the Confrontation Clause bars the use of out-of-court statements by witnesses unless the witness is unavailable and the defense had a prior opportunity to cross-examine the witness.  However, the Court limited its holding to testimonial evidence.  While the Court did not provide a comprehensive definition of testimonial evidence, the court did state that statements such as business records and those made in furtherance of a conspiracy were nontestimonial.  *Crawford*, 124 S. Ct. at 1367.  In this case, the computer records, regardless of whether they were business records or admissions by Defendant's

coconspirators, would be admissible under *Crawford*. Therefore Defendant has failed to demonstrate that the computer records would have been inadmissible under *Crawford* if Defendant was tried separately.

As to the mortgage fraud evidence, there has been no showing that inclusion of that evidence prejudiced Defendant or that the exclusion of the mortgage fraud evidence in a severed trial would have resulted in a different outcome. Moreover, the Court doubts that the inclusion of the evidence confused the jury in light of the fact that the jury convicted Karen Johnson but acquitted Joe Johnson on that charge. []

Exh. 5, Vol. II at 255-258.

## 2.  Federal Review- *Strickland* standard

Here, the post-conviction court correctly recognized and applied the *Strickland* standard to this issue. The post-conviction court stated that in no way did it condone defense counsel's actions in this case, but denied Petitioner relief on the grounds that he could not establish prejudice by counsel's failure to file a motion to sever because the same evidence would have been presented against him, if his trial had been severed. For the reasons discussed herein, the Court finds that the State courts' factual determinations were not an unreasonable determination based on the evidence presented. The State courts' decisions were also not contrary to or an unreasonable application of clearly established federal law.

### a.  Deficient Performance Prong

Notably, the post-conviction court did not address the deficiency prong of the *Strickland* analysis focusing instead on the

prejudice prong.  With regard to the deficiency prong, the post-conviction court was faced with defense counsel's admission to using cocaine during the Petitioner's trial.  Defense counsel further stated that his drug usage affected his perceptions and trial preparation.  Exh. 5, Vol. I at 25.

Unfortunately, this is not the first instance where ineffective assistance of counsel is alleged based on a defense counsel's drug addiction.  While the courts have not condoned this kind of behavior from defense counsel, and, in fact, reprimanded counsel who partake in these activities, the courts have ruled that a drug addicted attorney does not automatically constitute a violation of *Strickland*.  *See Kelly v. United States*, 820 F.2d 1173, 1176 (11th Cir. 1987)(finding that despite counsel's drug addiction, a review of the record did not reveal that counsel was acting under a diminished capacity); *Berry v. King*, 765 F.2d 451, 454 (5th Cir. 1985)(noting that the fact defense counsel used drugs while representing a defendant in a capital case was not, in and of itself, relevant to an ineffective assistance of counsel claim); *United States v. Walker*, 2000 WL 353518 (6th Cir. 2000)(finding drug addicted defense counsel did not constitute ineffective assistance *per se*)(citing *Bonin v. Calderon*, 59 F.3d 815, 838 (9th Cir. 1995)).  The Court further recognizes that even defense counsel's later admission, during the Rule 3.850 hearing, that he wished he would have done things differently in Petitioner's case

does not necessarily amount to a violation of *Strickland*.  *Grayson v. Thompson*, 257 F.3d 1194, 1222 (11th Cir. 2001)(stating counsel's own hindsight does not establish deficient performance).  In this case, defense counsel stated that he was unsure why he did not file a pre-trial motion to sever, but recalled that he may have not filed this pre-trial motion to sever because Petitioner was not paying him for his work.  *See* Exh. 5, Vol. X at 16-17, 21.  For purposes of this Order, the Court will presume *arguendo* that defense counsel's failure to file a motion to sever in this case fell below an objective standard of reasonableness and constituted deficient performance.  Nevertheless, the Court finds that this case is not the sort of rare case discussed in *Cronic*, 466 U.S. at 658, and *Chadwick v. Green*, 740 F.3d 897 (11th Cir. 1984) where prejudice is presumed *per se*.[8]  Thus, the Court turns to the prejudice prong of the *Strickland* analysis.

### b.  Prejudice prong

To establish prejudice, Petitioner must first demonstrate that the trial court would have granted his motion to sever.  An amended information jointly charged Petitioner and the Johnsons.  Florida Rule of Criminal Procedure 3.150(b)(2) provides that two or more defendants may be charged in the same indictment or information when each defendant is charged with one or more offenses alleged to

---

[8]To the contrary, the record in this case, particularly the transcript of the trial, shows despite counsel's drug addiction, Petitioner's case was subject to a meaningful adversarial process.

have been committed in the furtherance of a conspiracy.  Counts three and four of the amended information charged Petitioner and the Johnsons with conspiracy to racketeer and conspiracy to traffic 400 grams or more of cocaine.  Exh. 5, Vol. I. at 81.  Thus, this rule allowed for the co-defendants to be charged together and proceed to trial together.

Under Florida law, the trial court's decision whether to grant a motion to sever is within the court's discretion and is only reviewed by the State appellate court for abuse of discretion. *Kablitz v. State*, 979 So. 2d 969 (Fla. 4th DCA 2008); *Sule v. State*, 968 So. 2d 99 (Fla. 4th DCA 2007).  Pursuant to Fla. R. Crim. P. 3.152(b)(1)(A), "[s]everance is not necessary 'when all of the relevant evidence regarding the criminal offense is presented in such a manner that the jury can distinguish the evidence relating to each defendant's acts, conduct, and statements, and can then apply the law intelligently and without confusion to determine the individual's guilt or innocence.'" *McLean v. State*, 754 So. 2d 176, 178 (Fla. 2d DCA 2000)(citing *McCray v. State*, 416 So. 2d 804, 806 (Fla. 1982)).  The Court is unpersuaded by Petitioner's contentions that his trial should have been severed because of the amount of the evidence presented against his co-defendants.  As noted by the post-conviction court, Florida case law supports the trial court's denial of a motion to sever simply because there is more evidence against the co-defendants in a conspiracy case.  *See*

*Mese v. State*, 824 So. 2d 908 (Fla. 3d DCA 2002).  The jury verdict in this case evidences that the jury was able to decipher the charges and the evidence against each of the co-defendants. Moreover, in this case the co-defendants did not take adverse positions, thus severance was not required.  *Bruton v. United States*, 391 U.S. 123 (1968).

In the alternative, even if defense counsel had moved to sever Petitioner's trial and the trial court granted the motion, the same evidence introduced against the Johnsons would have been independently admissible against the Petitioner in his severed trial, regardless of whether he participated in the particular incident.  *See Id.* (discussing elements of RICO conspiracy under Florida and federal law and admissible evidence).  During the evidentiary hearing before the post-conviction court, testimony was presented from: counsel for co-defendant Joe Johnson, Steve Grogoza; the Statewide Prosecutor, Brian Pugh, who prosecuted this case; Petitioner's trial counsel, Donald Schold; Petitioner, and Rebecca Tyrrell, a criminal financial analyst employed by the Statewide Prosecutor's Office who testified at trial.  Exh. 5, Vols. IX-X.  The Statewide Prosecutor testified that had Petitioner been tried alone, he would have introduced the exact same evidence in that trial, with the exception of the mortgage fraud evidence that pertained solely to the Johnsons.  Exh. 5, Vol. IX at 143-151.

Petitioner argues *sub judice* that if his trial was severed,

co-defendant Karen Johnson would have testified in his trial.  This argument was not developed during the post-conviction court's evidentiary hearing.  Exh. 5, Vol. X at 70 (noting Karen Johnson was not present as a witness for Rule 3.850 hearing).  Petitioner fails to explain how any testimony from Karen Johnson would have benefitted him.  Instead, Petitioner refers the Court to an affidavit from the Johnsons, which he had previously submitted in support of his Rule 3.850 motion. Petition at 8 (citing Exh. A); *see also* Exh. 5, Vol. I at 1 (same exhibit attached to Petitioner's Rule 3.850 motion).  Presumably, Petitioner believes that Karen Johnson would have provided testimony about the computer evidence.  However, the testimony adduced at trial from Karen Johnson's "secretary,"[9] Robin Smith, established that Karen first asked Smith to detail the business transactions on the computer because Karen did not know how to use the computer.  *See* Trial Transcript: Exh. 9, Vol. II at 398, Vol III at 574.  Smith also testified about Petitioner's involvement in the Johnsons' cocaine dealing business.  Specifically, Smith testified that Petitioner supplied cocaine to the Johnsons, trafficked cocaine for the Johnsons, purchased cocaine from the Johnsons, and was occasionally paid for his services in cocaine by the Johnsons.  *See* Trial Transcript: Exh. 9,

---

[9]Smith also testified that she purchased cocaine from the Johnsons, used cocaine, and sold the cocaine for a profit for the Johnsons and sometimes for a profit for herself.  *See generally* Exh. 9, Vol. III.

Vol. III at 443-45, 518-519; 524-525.   Thus, contrary to Petitioner's contentions that he was convicted based on "guilt by association" with the Johnsons, the jury had direct testimony from Smith establishing Petitioner's involvement on which to base their finding of guilt.

To the extent Petitioner argues *sub judice* that if his trial had been severed, "he would have been able to have the jury focus on the lack of evidence against him," this strategy was in fact employed by defense counsel during the joint trial.   Defense counsel acknowledged that his trial strategy for Petitioner focused on how little evidence the State had against the Petitioner compared to the Johnsons.   Exh. 5, Vol. X at 36.   Counsel's strategy, in fact, resulted in a judgment of acquittal for Petitioner on the Racketeering and Trafficking Cocaine charges. Based on the foregoing, Petitioner is denied relief on ground one.

## B.  Ground Two: Failure to Investigate, Prepare and Present a Defense

Petitioner argues that defense counsel rendered ineffective assistance by failing to investigate and failing to prepare or present a defense in his case.   Petition at 9.   Petitioner states that he did not raise this claim before the State court, and therefore this claim is unexhausted and procedurally defaulted. *Id.* at 10.   However, Petitioner asserts that he can overcome the procedural default and again refers the Court to the affidavits submitted by his defense attorney, in which he admits to drug usage

and failure to prepare any defense, and an affidavit from defense counsel for co-defendant Joe Johnson. *Id.* (citing Exh. B).[10] Respondent submits that Petitioner was correct in asserting that this ground was unexhausted and procedurally defaulted.[11] Response at 20. Alternatively, Respondent submits that the claim lacks merit because the record supports a finding that counsel did investigate and prepare a defense. *Id.* at 20.

**1. Exhaustion of Claim before State court**

The Court disagrees with Respondent's assertion that this claim is unexhausted and procedurally defaulted.[12] The Court finds Petitioner raised his claim regarding counsel's failure to investigate, conduct depositions, or file "any pre-trial motions" as ground three of his Rule 3.850 motion. Exh. 5, Vol. I. In his claim before the State court, Petitioner blamed defense counsel's cocaine addiction for these specific deficiencies at trial. *Id.* The record, however, does not contain one subsection of

---

[10]As previously noted in the discussion of ground one, Petitioner attached these same affidavits to his Rule 3.850 Motion. See Exh. 5, Vol. I at 20-29.

[11]Counsel for Respondent fails to address whether Petitioner could overcome the procedural default by showing cause and prejudice, or a fundamental miscarriage of justice. Additionally, counsel does not address whether Petitioner's exhausted ineffective assistance of counsel claim overcomes the procedural default.

[12]In his Reply, Petitioner moved to voluntarily dismiss this claim on the basis that it was not exhausted, but the Court will not grant his motion pursuant to Fed. R. Civ. P. 41(a)(2). Reply at 8.

Petitioner's claim *sub judice*: that counsel rendered ineffective assistance based on his failure to discover evidence that "federal agents" tampered with the computer disc evidence admitted during trial.  Petition at 10.  Instead, any claim concerning the evidence obtained from the computer discs, Petitioner raised as a prosecutorial misconduct claim in ground one of his Rule 3.850 motion.  *Id.* at 4.  Indeed, Petitioner's failure to raise a claim of ineffective assistance stemming from the introduction of the computer evidence is now procedurally-barred under Florida law. *Pinder v. State*,, _____ So. 3d _____, 2010 WL 3239188 (Fla. 3d DCA 2010); *Thompson v. Secy Dep't of Corrections*, 517 F.3d 1279, 1283 (recognizing Florida's successive motion rule).  However, since the Court finds that Petitioner is not entitled to relief on this claim on the merits, the Court need not address whether Petitioner can overcome the procedurally-defaulted part of the claim with any of the enumerated exceptions to the procedural-default doctrine. *Thompson*, 517 F.3d at 1283, fn.8 (citing § 2254(b)(2)).

The post-conviction court summarily denied Petitioner relief on his claim that trial counsel rendered ineffective assistance by failing to investigate his case, failing to file any motions, and failing to present any defense as a result of his drug addiction. Specifically, the post-conviction court ruled:

> [T]he Defendant alleges that his counsel was ineffective because at the time of his representation of the Defendant, counsel was himself suffering from cocaine addiction.  As the State notes in its Response, the

> Florida Supreme Court has held that substance abuse, in
> and of itself, is insufficient to demonstrate ineffective
> assistance of counsel. [] The Defendant must demonstrate
> specific evidence that counsel's addiction impaired his
> actual conduct at trial.  Reviewing the trial transcript
> in its totality, the Court cannot find that counsel fell
> below an objective standard of reasonableness.  This
> ground fails to state a basis for relief.  The trial
> transcript consists of twelve volumes and is incorporated
> herein by reference. A copy is not attached due to the
> voluminous size of the transcript. []

Exh. 5, Vol I at 160.

## 2.  **Federal Review-** *Strickland* **standard**

The post-conviction court correctly recognized and applied the
*Strickland* standard to this claim.  *See Chadwick*, 740 F.3d at 901
(noting in a case involving counsel's failure to investigate the
appropriate standard of review is *Strickland*, not *Cronic*).  The
post-conviction court denied Petitioner relief finding that the
record of the trial transcript refuted Petitioner's allegations and
therefore did not establish deficient performance.  The Court finds
that the State courts' factual determinations were not an
unreasonable determination based on the evidence presented.  The
State courts' decisions were also not contrary to or an
unreasonable application of clearly established federal law.

### a. **Deficient Performance Prong**

Indeed, with the exception of counsel's failure to file a pre-
trial motion to sever as addressed above in ground one, the trial
transcript refutes Petitioner's allegations that counsel failed to
file *any* pre-trial motions.   The record shows that despite

counsel's admitted cocaine addiction and usage during the trial, counsel filed pre-trial motions, including a notice of appearance, a motion to release the defendant on his own recognizance, waiver of arraignment, plea of not guilty, and a demand for a jury trial. Exh. 5, Vol. X at 46-47. Defense counsel also joined in all motions raised by the co-defendants' respective counsel during trial regarding the issues of suppression and *Brady* violations. *See* Trial transcript. To the extent Petitioner now faults counsel for not discovering evidence that "federal agents" tampered with the computer evidence, the State stipulated to suppression of the "Joe Johnson Masonry disk," which was admittedly illegally seized. The remaining computer disk evidence was subject to a motion to suppress by defense counsel at trial and the trial court denied the motion.

"'[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' . . . '[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). The record establishes that prior to trial, counsel attempted to negotiate a plea-deal on behalf of the Petitioner by engaging in

discussions with the prosecutor "numerous times."[13]  *Id.* at 38-39, 50.   Counsel also hired a private investigator.   *Id.* at 48. Counsel testified that he completed a review of all of the discovery about a week before trial.   Exh. 5, Vol. X at 49. Counsel attended the depositions of Robin Smith, Audrey Jones, and Cindy Wooldridge, who were the State's primary witnesses against Petitioner.   Defense counsel vigorously cross-examined these witnesses and raised on closing argument any weaknesses in the witnesses' testimony.   *Id.* at 26, 47, 50.   Counsel spoke to Petitioner before trial "a number" of times, but admittedly only went to the jail once to meet with Petitioner in person.   *Id.* at 24.   Petitioner, however, does not establish how meeting with counsel only once in person amounted to prejudice in his case. Perhaps most significant, defense counsel's motion for acquittal on behalf of Petitioner resulted in dismissal of two counts in the information.   Therefore, based on the record, Petitioner is denied relief on ground two.

### C. Ground Three: Double Jeopardy Violation

Petitioner argues that his Fifth Amendment protection against Double Jeopardy was violated when the same evidence was used on the acquitted charges to convict him of conspiracy.   In Response,

---

[13]Defense counsel, in fact, did not immediately recall based on the passage of time from the date of trial to the date of the evidentiary hearing that he engaged in settlement negotiations, but his memory was refreshed by an earlier memo he had written to the prosecutor.

Respondent points out that Petitioner did not raise this claim on direct appeal, and, as such, the claim is procedurally barred. Response at 22.

## 1. Exhaustion of Claim before State court

The Court agrees that this claim is not exhausted because Petitioner never raised this issue before the State courts. As such, the claim is now procedurally defaulted according to Florida law. *Pinder*, 2010 WL 3239188 * (Fla. 3d DCA 2010); *Thompson*, 517 F.3d 1279, 1283 (recognizing Florida's successive motion rule). Despite the procedural default, the Court may still deny Petitioner relief on this claim on its merits.[14]   *Thompson*, 517 F.3d at 1283, fn.8 (citing § 2254(b)(2)).

## 2. Federal Review- Double Jeopardy Clause

The Court finds that the State courts' factual determinations were not an unreasonable determination based on the evidence presented. The State courts' decisions were also not contrary to or an unreasonable application of clearly established federal law. The Double Jeopardy Clause of the United States Constitution provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." The Double Jeopardy Clause protects defendants in three situations: (1) a second prosecution for the same offense after acquittal; (2) a

---

[14]In his Reply, Petitioner moved to voluntarily dismiss ground three.  Reply at 8.  The Court does not grant the motion pursuant to Fed. R. Civ. P. 41(a)(2).

second prosecution for the same offense after conviction; or (3) multiple punishments for the same offense. *Jones v. Thomas*, 491 U.S. 376, 380-381 (1989).

Here, the trial court acquitted Petitioner on the RICO and trafficking of cocaine charges. The jury found Petitioner guilty on the two different charges of conspiracy: conspiracy to commit RICO and conspiracy to traffic cocaine. Under *Blockburger v. United States*, 284 U.S. 299 (1932), if a criminal statute requires proof of a fact that another statute does not, then double prosecution for the same offense does not exist, even if there is substantial overlap in the evidentiary showing for the two offenses. In Petitioner's case, the crimes are different and required proof of different elements. Thus, it is unclear how Petitioner believes his conviction on the conspiracy charges amounts to a Double Jeopardy violation. As such, Petitioner is denied relief on ground three.

### D.  Ground Four: Insufficiency of the Evidence

Petitioner next argues that the evidence was insufficient to convict him on the conspiracy to traffic in cocaine 400 grams or more conviction. Petition at 15. Specifically, Petitioner contends that the State failed to present any evidence at trial that established "any agreement- involving the Petitioner to traffic in cocaine of any amount whatsoever." *Id.* Petitioner attempts to discredit Robin Smith's testimony and further avers

that the State "improperly" combined the different transactions listed on the Johnsons' computer records to establish that Petitioner conspired to traffic at least 400 grams of cocaine. *Id.* at 17. In Response, Respondent first notes that Petitioner raised this claim of insufficiency of the evidence on direct appeal, and, as such, the claim is exhausted. Response at 22. Respondent submits, however, that Petitioner is attempting to seek a "second appeal" of the issue. *Id.* at 22-23.

The Court finds this claim is exhausted because Petitioner raised a sufficiency of the evidence claim on direct appeal. The appellate court *per curiam* affirmed the trial court's decision. The Court finds that the State courts' factual determinations were not an unreasonable determination based on the evidence presented. The State courts' decisions were also not contrary to or an unreasonable application of clearly established federal law. Petitioner essentially seeks to relitigate the facts and evidence adduced at trial. The role of the federal court in "habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).

Construing the Petition liberally to allege an insufficiency of the evidence claim under federal law, the Court must apply the following standard: "whether, after viewing the evidence in the

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. "Expressed more fully, this means a reviewing court 'faced with a record of historical facts that supports conflicting interests must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to the resolution." *McDaniel v. Brown*, ___ U.S. ____, 130 S. Ct. 665, 673 (2010)(internal citation omitted). "'[A] reviewing court must consider all of the evidence admitted by the trial court' regardless whether that evidence was admitted erroneously." Id. at 672. In weighing the sufficiency of the evidence, "[i]t is not required that the evidence rule out every hypothesis except that of guilt beyond a reasonable doubt." *Martin v. Alabama*, 730 F.2d 721, 724 (11th Cir. 1984).

After viewing the evidence in the light most favorable to the prosecution, the Court determines that any rational trier of fact could have found the essential elements of the two crimes for which Petitioner was convicted beyond a reasonable doubt. Petitioner concedes that the computer record evidence established the amount of cocaine he conspired to traffic. *See* Petition at 17. Witness Robin Smith's testimony detailed Petitioner's involvement in the Johnsons' cocaine dealing business. Petitioner is denied relief on ground four.

**E.   Ground Five:  Trial court erred by admitting hearsay computer records**

Petitioner argues that the trial court erred by admitting into evidence, over counsels' objections, computer records and charts prepared by the State that were extrapolated from the records. Petition at 20.  Petitioner submits that the computer records were not admissible under the business record exception to the hearsay rule because the records did not constitute business records.  *Id.* at 19-20.  Petitioner argues that the State's reliance on this evidence to prove his guilt amounts to "reversible error."  *Id.* at 19.  In Response, Respondent submits that similar to ground four, Petitioner is attempting to re-litigate his case at the federal level.  Response at 24.  Respondent further avers that Petitioner is:

> mis-characterizing the nature of the records and confusing the raw data contained in computer discs and hard drives from the schedules produced.  The raw data, while business records of the Johnson cocaine business, also included Petitioner engaged in a conspiracy to acquire and sell cocaine, coconspirator hearsay admissible under the coconspirator exception to the hearsay rules.

*Id.* at 24.

The Court finds this claim is exhausted because Petitioner raised this claim on direct appeal.  Exh. 1.  The appellate court *per curiam* affirmed the trial court's decision to admit into evidence certain computer records under the business record exception.  Exh. 3.  The Court finds that the State courts' factual

determinations were not an unreasonable determination based on the evidence presented.  The State courts' decisions were also not contrary to or an unreasonable application of clearly established federal law.

The State courts' decision on this evidentiary matter is entitled to deference.  "Federal habeas corpus relief based on evidentiary rulings will not be granted unless it goes to the fundamental fairness of the trial."  *McCoy v. Newsome*, 953 F.2d 1252, 1265 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991).  Petitioner has not demonstrated that the State court's ruling was erroneous, or that the ruling deprived him of a fundamentally fair trial.  The record supports the trial court's admission of the computer records under the business record exception.  To the extent Petitioner claims "reversible error" based on the charts, or summaries, which the prosecution compiled from the computer records, Florida Statute § 90.956 permits such action.  In pertinent part, Fla. Stat. § 90.956 provides:

> When it is not convenient to examine in court the contents of voluminous writings, recordings, or photographs, a party may present them in the form of a chart, summary, or calculation by calling a qualified witness.  The party intending to use such a summary must give timely written notice of his or her intention to use the summary, proof of which shall be filed with the court, and shall make the summary and the originals or duplicates of the data from which the summary is compiled available for examination or copying, or both, by other parties at a reasonable time and place.  A judge may order that they be produced in court.

*Id.*   Petitioner does not allege that counsel did not act in accordance with this statute.  Florida's statute is similar to Federal Rule of Evidence 1006.  Therefore, the Court finds that the State courts' factual determinations were not an unreasonable determination based on the evidence presented.  Further, Petitioner has not demonstrated how the State courts' decisions were contrary to or an unreasonable application of clearly established federal law.  Petitioner is denied relief on ground five.

ACCORDINGLY, it is hereby

**ORDERED**:

1.  The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED with prejudice**.

2.  The Clerk of Court shall enter judgment accordingly, terminate any pending motions, and close this case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  *Id.*  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional

right." Id. at § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*

**DONE AND ORDERED** in Fort Myers, Florida, on this 28th day of September, 2010.

Charlene Edwards Honeywell
United States District Judge

SA: alj
Copies: All Parties of Record

-40-